UNITED STATES DISTRICT COURT                              FA6117
EASTERN DISTRICT OF NEW YORK

———————————————————————
Michael KAMBUROWSKI *et ux.*,                    )
                                                 )
                                                 )
                    *Plaintiff*,                 )    No. 05-CV-0953 (CBA/RLM)
*v.*                                             )
                                                 )    (Amon, J.)
                                                 )    (Mann, M.J.)
Michael KIDD, Deportation Officer, U.S.          )
Immigration and Customs Enforcement, and         )
John CARBONE, (former) Acting Field              )
Director, U.S. Immigration and Customs           )
Enforcement,                                     )
                                                 )
                    *Defendants*.                )
———————————————————————                         )


## STATEMENT OF MATERIAL FACTS
## <u>AS TO WHICH NO GENUINE ISSUE REMAINS TO BE TRIED</u>

Benton J. Campbell
United States Attorney

F. Franklin Amanat (FA6117)
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-2776
(718) 254-6024

*Attorneys for Defendants*

Dockets.Justia.com

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH NO GENUINE ISSUE REMAINS TO BE TRIED**

Pursuant to FED. R. CIV. P. 56(e) and Local Civil Rule 56.1(a) of the United States District Court for the Eastern District of New York, defendants Michael S. Kidd and John Carbone, sued in their individual capacities, and putative defendant the United States of America, hereby state that the following material facts, as set forth in the annexed declaration of Michael S. Kidd ("Kidd Decl."), exhibits to that declaration and to the Declaration of F. Franklin Amanat, and deposition testimony, and in the pleadings and other submissions filed in this Court, are facts as to which there remains no genuine issue to be tried:

**Plaintiff Kamburowski and His Arrival in the United States**

1.      Kamburowski is a citizen of the Commonwealth of Australia. He was admitted to the United States at Los Angeles, California, on January 23, 1995, as a nonimmigrant visitor for pleasure on a six-month B-2 visa that entitled him to remain in the United States only through July 22, 1995. Kidd Decl. ¶ 7; Exh. 1, at 36, 146, 147; Am. Compl. ¶ 7; Answer ¶ 7.

2.      Kamburowski did not depart the United States by July 22, 1995, as he was required to do under the terms of his visa, but illegally remained in the United States beyond that date without authorization from the former Immigration and Naturalization Service ("INS"), in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) (1994). Kidd Decl. ¶ 8; Exh. 1, at 36; Kamburowski Dep. 18:3-22.

3.      Kamburowski's B-2 visa did not entitle him to work for compensation in the United States, and Kamburowski had no other authorization from the INS or any other federal agency to seek or to obtain employment in this country. Kidd Decl. ¶ 9.

4.      Beginning in 1995 Kamburowski was employed for wages or other compensation at Americans for Tax Reform.  In so doing, he was in violation of section 237(a)(1)(C)(I) of the INA, 8 U.S.C. § 1227(a)(1)(C)(I) (1994), in that he failed to maintain or comply with the conditions of nonimmigrant status under which he was admitted to the United States.  Kidd Decl. ¶ 9; Exh. 1, at 36; Kamburowski Dep. 18:11-16.

**Kamburowski's First Marriage and First Adjustment Application**

5.      On February 7, 1997, Kamburowski married Terri Lynn Sweat, a U.S. citizen, in Alexandria, Virginia. Kidd Decl. ¶ 10; Exh. 1, at 52.

6.      Kamburowski and Sweat separated on or about April 1, 1997 (i.e., less than two months after their marriage), and after that date they lived separate and apart, without any cohabitation and without interruption.  On November 12, 1997, Kamburowski and Sweat entered into a legal separation agreement.  Kidd Decl. ¶ 11; Exh. 1, at 7.

7.      On November 25, 1997, Kamburowski and Sweat, through counsel, submitted a number of immigration forms to the INS, including a Petition for Alien Relative (Form I-130) (Exh. 1, at 45, 117-19), Biographical Information forms (Form G-325A) (Exh. 1, at 50-51, 124-25), an Application to Register Permanent Residence or Adjust Status (Form I-485) (Exh. 1, at 41-44, 120-123), an Employment Authorization Form (Form I-765) (Exh. 1, at 128), and an Affidavit of Support (Form I-134) (Exh. 1, at 126-27).  Kidd Decl. ¶ 12.

8.      The purpose of these forms was to adjust Kamburowski's status from an alien unlawfully in the United States as a nonimmigrant overstay to a lawful permanent resident alien. Kidd Decl. ¶ 13.

9.    Even though Kamburowski and Sweat had legally separated two weeks before these forms were submitted to the INS, and even though the couple had not cohabited for almost eight months (Exh. 1, at 7), Sweat was purporting to sponsor Kamburowski's application for permanent residence in the United States.  Kidd Decl. ¶ 13; Exh. 1, at 45, 117-19.

10.    Kamburowski signed the Application to Register Permanent Residence or Adjust Status (Form I-485) on September 29, 1997, but the form was not paid for or submitted to the INS until November 25, 1997.  Kidd Decl. ¶ 14; Exh. 1, at 41-44, 120-23.

11.    The address listed on the I-485 was "c/o Paul Sherman Allen and Associates, 1329 18th Street, N.W. Washington D.C., 20036."  The I-485 indicated that Kamburowski's visa status as of September 29, 1997, was "B-2 expired."  Kidd Decl. ¶ 14; Exh. 1, at 41-44, 120-23.

12.    Kamburowski signed his Biographical Information form (Form G-325A) on September 22, 1997, and his Application for Employment Authorization (Form I-765) on September 23, 1997, but he did not pay for or submit either form until November 25, 1997. Both of these forms listed his address as of the date of filing as 2001 N. Adams St., Apt. 416, Arlington, VA 22201. Kidd Decl. ¶ 15; Exh. 1, at 51, 125, 128.

13.    Sweat signed the Petition for Alien Relative (Form I-130) on September 22, 1997, but the form was not paid for or submitted to the INS until November 25, 1997.  In line 20 of the I-130, Sweat certified under the penalty and pains of perjury that as of September 22, 1997, she and Kamburowski were residing together at 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  Kidd Decl. ¶ 16; Exh. 1, at 45, 117-19.

14.    Sweat signed her Biographical Information form (G-325A) on September 23, 1997, but that form was also not paid for or submitted until November 25, 1997. Exh. 1, at 50, 124.  Sweat signed the Affidavit of Support (Form I-134) on September 29, 1997, and that

form was also not submitted until November 25, 1997. Exh. 1, at 126-27. In both of these documents, Sweat stated, under oath, that Kamburowski's address as of the date of filing was 2001 N. Adams St., Apt. 416, Arlington, VA 22201. Kidd Decl. ¶ 17.

15.    On April 9, 1998, the Circuit Court for the City of Alexandria entered a Final Decree of Divorce dissolving the marriage of Kamburowski and Sweat. Exh. 1, at 7.

16.    Kamburowski did not inform the INS of this divorce until he filed a second I-130 in 2002. Kidd Decl. ¶ 18.

17.    Virtually every alien in the United States is under an affirmative obligation to report address changes to the INS (now, ICE), regardless of immigration status or circumstances, pursuant to the registration requirements of the INA. Specifically, all aliens who remain in the United States for more than 30 days have a duty to register with the immigration authorities, unless they have been expressly exempted from the requirement, and, if registered, have a duty to keep the immigration authorities apprised of any address changes. Kidd Decl. ¶ 19; 8 U.S.C. §§ 1302, 1305(a), 1306(b).

18.    Aliens subject to these registration requirements must report their change of address to the immigration authorities on a Change of Address Card (Form I-697A). Kidd Decl. ¶ 19; Kamburowski Dep. 47:25-48:16.

19.    Kamburowski was not exempt from the requirement that he keep the immigration authorities apprised of any address changes. Kidd Decl. ¶ 19; Kamburowski Dep. 47:25-48:16.

20.    Kamburowski's immigration file does not contain any Change of Address Cards (Forms I-697A) submitted to INS after November 25, 1997, informing the INS that his address was anything other than 2001 N. Adams St., Apt. 416, Arlington, VA 22201. Kidd Decl. ¶ 20; Kamburowski Dep. 47:25-48:16.

21.    In numerous documents Kamburowski and Sweat submitted to INS on November 25, 1997, Kamburowski and/or Sweat swore under the penalties of perjury that their address was 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  Kidd Decl. ¶ 20.

22.    On December 2, 1998, the INS Office in Arlington, Virginia, sent a letter to Kamburowski at 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  A copy of this letter was also sent to Kamburowski's counsel of record, Paul Shearman Allen.  Kidd Decl. ¶ 21; Exh. 1, at 39.

23.    The immigration file contains no indication that this letter did not reach Kamburowski or his counsel, or that the Postal Service returned the mail as undeliverable.  Kidd Decl. ¶ 21.

24.    The letter of December 2, 1998, directed Kamburowski to appear before an INS examiner on January 4, 1999, at 11:00 a.m., for an interview in connection with the Application for Adjustment of Status.  The letter directed Kamburowski to bring to the interview, among other things, his spouse, evidence of common residence and shared life, and a current letter of employment. Kidd Decl. ¶ 22; Exh. 1, at 39.

25.    Kamburowski did not show up for his scheduled interview on January 4, 1999, nor is there any indication in the file that he or his counsel contacted INS in advance of the scheduled interview to inform INS that he would not be attending the interview or to explain his absence. Kidd Decl. ¶ 23; Exh. 1, at 8.

26.    On April 21, 1999, the INS Office in Arlington, Virginia, sent a second letter to Kamburowski at 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  A copy of this letter was also sent to Kamburowski's counsel of record, Paul Shearman Allen.  Kidd Decl. ¶ 24; Exh. 1, at 38.

27.     The immigration file contains no indication that this letter did not reach Kamburowski or his counsel, or that the Postal Service returned the mail as undeliverable.  Kidd Decl. ¶ 24.

28.     The letter of April 21, 1999, directed Kamburowski to appear before an INS examiner on May 25, 1999, at 3:00 p.m., for an interview in connection with the Application for Adjustment of Status.  The letter directed Kamburowski to bring to the interview, among other things, his spouse, evidence of common residence and shared life, and a current letter of employment. Kidd Decl. ¶ 25; Exh. 1, at 38.

29.     Kamburowski did not show up for his scheduled interview on May 25, 1999, nor is there any indication in the file that he or his counsel contacted INS in advance of the scheduled interview to inform INS that he would not be attending the interview or to explain his absence. Kidd Decl. ¶ 26; Exh. 1, at 8.

30.     On December 17, 1999, the INS District Director in Arlington, Virginia, issued a Decision on Application for Status as Permanent Residence (Form I-291).  Kidd Decl. ¶ 27; Exh. 1, at 8.

31.     The decision orders that the application for status as a permanent resident be denied for the following reasons:

> On two occasions you have failed to appear for scheduled interviews (January 4, 1999 and May 25, 1999) regarding your application for status as a lawful permanent resident.  Because you have failed to appear for an interview and have not provided valid explanations for your absences, your application must be dismissed for lack of prosecution.

Kidd Decl. ¶ 27; Exh. 1, at 8.

32.     The decision informed Kamburowski that his employment authorization was automatically revoked as of December 17, 1999, and that he had until January 17, 2000, to effect his departure from the United States voluntarily, without the institution of proceedings to enforce his departure.  Kidd Decl. ¶ 27; Exh. 1, at 8.

33.     Kamburowski was also advised that if he failed to depart from the United States by the date specified, proceedings will be instituted to enforce his departure. Kidd Decl. ¶ 27; Exh. 1, at 8.

34.     The Decision on Application for Status as Permanent Residence (Form I-291) was sent to 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  The immigration file contains no indication that this letter did not reach Kamburowski, or that the Postal Service returned the mail as undeliverable.  Kidd Decl. ¶ 28; Exh. 1, at 8.

35.     Kamburowski was personally aware before the end of 1999 that his application for adjustment of status had been denied; he was advised of this fact by his attorneys. Kamburowski Dep. 62:22-64:20.


**Kamburowski's Removal Proceedings**

36.     On December 5, 2000, the INS Office in Arlington, Virginia, issued a Notice to Appear (Form I-862) charging Kamburowski with being removable from the United States on two grounds.  First, Kamburowski was charged with having overstayed his nonimmigrant visa, in violation of 8 U.S.C. § 1227(a)(1)(B) (1994).  Second, Kamburowski was charged with failing to maintain or comply with the conditions of the nonimmigrant status under which he was admitted, in violation of 8 U.S.C. § 1227(a)(1)(C)(I) (1994), in that he was employed for wages or other compensation without authorization of the INS.  Kidd Decl. ¶ 29; Exh. 1, at 36-37.

37.     The Notice to Appear was filed with the immigration court in Arlington, Virginia, and was served on Kamburowski by regular mail to 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  Kidd Decl. ¶ 30; Exh. 1, at 37.

38.     The immigration file contains no indication that the Notice to Appear did not reach Kamburowski, or that the Postal Service returned the mail as undeliverable, either to the INS or to the immigration court located at 901 N. Stuart St., Apt. 1300, Arlington, VA 22203. Kidd Decl. ¶ 30.

39.     On January 8, 2001, the immigration court in Arlington, Virginia, generated an automated Notice of Hearing in Removal Proceedings, directing Kamburowski to appear before an immigration judge on February 22, 2001, to answer the charges of the Notice to Appear. Kidd Decl. ¶ 31; Exh. 1, at 35.

40.     The Notice of Hearing contained the following warning:

> Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions: (1) You may be taken into custody by the Immigration and Naturalization Service and held for further action.  OR (2) Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act.  An order of removal will be entered against you if the Immigration and Naturalization Service established by clear, unequivocal, and convincing evidence that a) you or your attorney has been provided this notice and b) you are removable.

Kidd Decl. ¶ 31; Exh. 1, at 35.

41.     The Notice of Hearing was served on Kamburowski by regular mail to 2001 N. Adams St., Apt. 416, Arlington, VA 22201.  The immigration file contains no indication that the Notice to Appear did not reach Kamburowski, or that the Postal Service returned the mail

as undeliverable, either to the INS or to the immigration court in Arlington. Kidd Decl. ¶ 32; Exh. 1, at 35.

42.     The Notice of Hearing contains the following paragraph:

> IF YOUR ADDRESS IS NOT LISTED ON THE NOTICE TO APPEAR, OR IF IT IS NOT CORRECT, WITHIN FIVE DAYS OF THIS NOTICE YOU MUST PROVIDE TO THE IMMIGRATION COURT ARLINGTON, VA THE ATTACHED FORM EOIR-33 WITH YOUR ADDRESS AND/OR TELEPHONE NUMBER AT WHICH YOU CAN BE CONTACTED REGARDING THESE PROCEEDINGS. EVERYTIME YOU CHANGE YOUR ADDRESS AND/OR TELEPHONE NUMBER, YOU MUST INFORM THE COURT OF YOUR NEW ADDRESS AND/OR TELEPHONE NUMBER WITHIN 5 DAYS OF THE CHANGE ON THE ATTACHED FORM EOIR-33. . . .   CORRESPONDENCE FROM THE COURT, INCLUDING HEARING NOTICES, WILL BE SENT TO THE MOST RECENT ADDRESS YOU HAVE PROVIDED, AND WILL BE CONSIDERED SUFFICIENT NOTICE TO YOU, AND THESE PROCEEDINGS CAN GO FORWARD IN YOUR ABSENCE.

Kidd Decl. ¶ 33; Exh. 1, at 35 (all caps in original).

43.     The immigration file contains no record that Kamburowski ever filed an EOIR-33 form with the immigration court in Arlington, Virginia, notifying that court of any change in address.  Kidd Decl. ¶ 34.

44.     Kamburowski did not appear before the immigration court on February 22, 2001, as he had been directed to do by the Notice of Hearing.  Kidd Decl. ¶ 35.

45.     On February 26, 2001, the immigration court in Arlington, Virginia, generated a second automated Notice of Hearing in Removal Proceedings, this time directing Kamburowski to appear before an immigration judge on May 31, 2001, to answer the charges of the Notice to Appear.  The Notice of Hearing contained the same warnings and instructions with regard to

change of address that had been contained in the first Notice of Hearing. Kidd Decl. ¶ 36; Exh. 1, at 142.

46.   The second Notice of Hearing was served on Kamburowski by regular mail to 3202 North Pershing Drive, Arlington, VA 22201. Kidd Decl. ¶ 37; Exh. 1, at 142.

47.   3202 North Pershing Drive, Arlington, VA 22201 is the address Kamburowski had declared on his Form I-94, at the time of his arrival in this country in 1995, as the address in the United States at which he intended to reside.   It is also listed on Kamburowski's Biographic Information form (Form G-325A) as the first address at which he resided after arriving in the United States. Kidd Decl. ¶ 37; Exh. 1, at 40, 50; Kamburowski Dep. 25:15-25, 26:2-12.

48.   The immigration file contains no indication that the second Notice to Appear did not reach Kamburowski, or that the Postal Service returned the mail as undeliverable, either to the INS or to the immigration court in Arlington. Kidd Decl. ¶ 37; Exh. 1, at 35.

49.   Kamburowski did not appear before the immigration court on May 31, 2001, as he had been directed to do by the Notice of Hearing.  Kidd Decl. ¶ 38; Exh. 1, at 139.

50.   As a result, on that date Immigration Judge John Milo Bryant issued an order *in absentia* finding that Kamburowski had abandoned any and all claims for relief from removal and directing that he be removed form the United States to Australia.  Kidd Decl. ¶ 38; Exh. 1, at 139; Am. Compl. ¶ 25; Answer ¶ 25.

51.   The order of removal was served on Kamburowski on June 5, 2001, by regular mail to 3202 North Pershing Drive, Arlington, VA 22201. Kidd Decl. ¶ 39; Exh. 1, at 140.

52.     The immigration file contains no indication that the order of removal did not reach Kamburowski, or that the Postal Service returned the mail as undeliverable, either to the INS or to the immigration court in Arlington.  Kidd Decl. ¶ 39.

53.     On August 1, 2001, the INS District Director in Arlington signed a Warrant of Removal/Deportation (Form I-205) notifying "any officer of the United States Immigration and Naturalization Service" that Kamburowski is subject to removal/deportation from the United States, based upon a final order by an immigration judge in exclusion, deportation, or removal proceedings.  The warrant commands said officers "to take into custody and remove from the United States the above-named alien, pursuant to law."  Kidd Decl. ¶ 40; Exh. 1, at 25.

54.     On August 2, 2001, the INS District Director in Arlington issued a "bag and baggage" letter, or Notice to Surrender (Form I-166), to Kamburowski, directing him to report to the INS Office in Arlington with his baggage, completely ready for deportation.  Kidd Decl. ¶ 41; Exh. 1, at 30.

55.     The bag and baggage letter was mailed to Kamburowski at 3202 North Pershing Drive, Arlington, VA 22201.  Kidd Decl. ¶ 42; Answer ¶ 14.

56.     The immigration file contains one envelope that the Postal Service returned to the INS with the notation "moved left no address." This envelope is stamped with dates of September 6, 2001, August 14, 2001, August 7, 2001, and one other date that is illegible.  This is the only document in the immigration file for which there is any indication of non-delivery. Kidd Decl. ¶ 43; Exh. 1, at 28; Answer ¶ 14.

**Kamburowski's Second Marriage and Second Adjustment Application**

57.    On or about June 14, 2001, Kamburowski married again, this time to Gina Jessica Smith.   Kidd Decl. ¶ 44; Exh. 1, at 98; Am. Compl. ¶ 4, 7; Answer ¶ 4, 7.

58.    On or about May 31, 2002, Kamburowski and Smith, through counsel, submitted a number of immigration forms to the INS, including a Petition for Alien Relative (Form I-130) (Exh. 1, at 89-90), Biographical Information forms (Form G-325A) (Exh. 1, at 100-01), an Application to Register Permanent Residence or Adjust Status (Form I-485) (Exh. 1, at 102-03), an Employment Authorization Form (Form I-765) (Exh. 1, at 112), and an Affidavit of Support (Form I-134) (Exh. 1, at 108-11).   Kidd Decl. ¶ 45; Am. Compl. ¶ 8; Answer ¶ 8.

59.    The purpose of these forms was to adjust Kamburowski's status from an alien who was unlawfully in the United States to a lawful permanent resident alien.   Kidd Decl. ¶ 46.

60.    Kamburowski's address on all of these forms was listed as 11-15 St. Nicholas Avenue, Apt. 5H, New York, NY  10026. Kidd Decl. ¶ 47; Exh. 1, at 89-90, 100-03, 108-12..

61.    There is no indication in the file that Kamburowski had ever previously provided this address to the INS.   Kidd Decl. ¶ 47; Kamburowski Dep. 44:24-45:22.


**Defendant Michael S. Kidd**

62.    Defendant Michael S. Kidd has been an employee of the former INS and its successor agency, the Immigration and Customs Enforcement ("ICE") component of the Department of Homeland Security, from July 1996 to the present.  Kidd Decl. ¶ 1.

63.    From December 2002 until May 2007 (and therefore during all times relevant to this case), he held the position of Deportation Officer in the Fugitive Operations Team of ICE.

During that time, he was assigned to the New York District of ICE at 26 Federal Plaza, Manhattan, and was supervised by Cyril Lopez. Kidd Decl. ¶ 1.

64. As a Deportation Officer in the Fugitive Operations Team, Kidd was responsible for locating and apprehending aliens who have been ordered to leave the United States but have failed to do so, whether they are criminal aliens or non-criminal aliens. Kidd Decl. ¶ 3.

65. In the course of working in the Fugitive Operations Team, Kidd received specific training in the use of a number of law enforcement databases, as well as fugitive tracking methods, arrest techniques, and the use of various weapons. He also received specialized training in immigration law and in the policies and procedures of the various immigration agencies, including the immigration courts and the Board of Immigration Appeals. Kidd Decl. ¶ 3.

**The Basis for Kamburowski's Arrest**

66. On January 22, 2004, Kamburowski had a scheduled interview at the offices of U.S. Citizenship and Immigration Services ("CIS") at 711 Stewart Ave., Garden City, New York, in connection with his Adjustment of Status application (Form I-485) filed on May 31, 2002. Am. Compl. ¶ 9.

67. Prior to the interview, Valeri F. Auletta, the District Adjudication Officer ("DAO") assigned to adjudicate the application, ran the mandated security and background checks on Kamburowski. Cross-referencing Kamburowski's name in IBIS, a law enforcement database, revealed that he was an alien absconder who had an outstanding warrant of deportation and a final order of removal. Kidd Decl. ¶ 49; Exh. 1, at 11. The database

specifically stated "5/31/01 Ordered removed in absentia and 9/17/01 FTA for I-166 Fugitive." Auletta Dep. 15:2-22; Exh. 1, at 20.

68.    Auletta had clear evidence that Kamburowski was a fugitive.  Kidd Decl. ¶ 50.

69.    At approximately 8:00 a.m. on January 22, 2004, Auletta called Kidd on his cell phone.  At that time, Kidd was in Brooklyn conducting surveillance with his regular partner, Immigration and Customs Enforcement Agent Luis Tituana.  Kidd Decl. ¶ 48.

70.    Auletta informed Kidd that she was meeting at the CIS Office in Garden City with an applicant for adjustment of status.  She had run a mandated background check on the applicant in IBIS, which revealed that the applicant was a fugitive from an outstanding warrant of deportation and a final order of removal.  Kidd Decl. ¶ 49; Exh. 1, at 11.

71.    Auletta provided Kidd with Kamburowski's alien number (A76 595 582), and told him that Kamburowski was from Australia and that there was no indication in the file that he had any criminal history.  Kidd Decl. ¶ 51.

72.    Kidd called his office and asked his supervisor, Cyril Lopez, to run the fugitive's alien number against the DACS database.  DACS, or "Deportable Alien Control System," is an internal database that ICE uses in connection with its law enforcement and immigration enforcement missions.  Kidd Decl. ¶ 52.

73.    Approximately five to ten minutes later, Lopez called Kidd to inform him that DACS confirmed that Kamburowski had been ordered to leave the country but had failed to comply with the order of removal.  There were no pending motions or appeals in Kamburowski's case, and a final order of removal had been issued.  Kidd Decl. ¶ 53.

74.    Lopez instructed Kidd that apprehending the fugitive alien at Garden City was to take priority over his other assignments, and he ordered Kidd and Tituana to cut short

whatever they were doing at that time and to head to Garden City immediately. Tituana and Kidd proceeded directly to the Garden City CIS office. Kidd Decl. ¶ 54.

75. Upon their arrival at the Garden City CIS office, Tituana and Kidd were met by Auletta, who handed Kamburowski's immigration file to Kidd. Kidd Decl. ¶ 55.

76. Kidd proceeded to review the file. During this review, Tituana, Auletta, and, at one point, Supervising DAO Dennis Bunce were all present. Kidd Decl. ¶ 55.

77. Standard practice on the ICE Fugitive Operations Team provides that there are two primary documents a deportation officer looks for when reviewing a fugitive alien's immigration file: a signed warrant of deportation and a signed removal order issued by an immigration judge. Kidd Decl. ¶ 56.

78. Kamburowski's file contained a Warrant of Removal/Deportation (Form I-205), signed by the INS District Director in Arlington, Virginia, on August 1, 2001. Exh. 1, at 25. The warrant notified "any officer of the United States Immigration and Naturalization Service" that Kamburowski is subject to removal/deportation from the United States, based upon a final order by an immigration judge in exclusion, deportation, or removal proceedings, and commands said officers "to take into custody and remove from the United States the above-named alien, pursuant to law." Exh. 1, at 25. *See* Kidd Decl. ¶ 57.

79. A signed Warrant of Removal/Deportation remains valid indefinitely and authorizes a deportation officer immediately to arrest and deport the named subject of the warrant, regardless of any other considerations. Kidd Decl. ¶ 58.

80. The existence in the file of the signed warrant in itself confirms the existence of probable cause to make the arrest, and it is neither necessary nor appropriate for a deportation

officer to seek independent verification of the basis for a Warrant of Removal/Deportation by calling the district from which it was issued. Kidd Decl. ¶ 58.

81.  Kamburowski's file also contains a final order of removal, dated May 31, 2001, and signed by Immigration Judge John Milo Bryant in Arlington, Virginia, finding that Kamburowski had abandoned any and all claims for relief from removal and directing that he be removed from the United States to Australia. Kidd Decl. ¶ 59; Exh. 1, at 139.

82.  Kidd was aware that the final order of removal had been entered *in absentia*, as it stated that Kamburowski had failed to appear at his deportation hearing. Kidd Decl. ¶ 59.

83.  By examining the contents of the file, Kidd was able to confirm that it was a valid final order of removal. Kidd Decl. ¶ 59.

84.  Based on the facts known to him at that time, Kidd had no reasonable basis to question the validity of the Warrant of Removal/Deportation or the final order of removal. Kidd Decl. ¶ 60.

85.  Given the presence in the file of the signed Warrant of Removal/Deportation and the immigration judge's signed final order of removal, there was ample probable cause to arrest Kamburowski. Kidd Decl. ¶ 61.

86.  Kidd did not need any additional authorization, approval, or information to arrest Kamburowski. Kidd Decl. ¶ 61.

87.  Kidd did not have the authority NOT to arrest Kamburowski, or to defer arrest or inspection of Kamburowski to a later date. Kidd Decl. ¶ 61.

88.  After having thoroughly reviewed the file, Kidd decided to arrest Kamburowski. Kidd Decl. ¶ 61.

**Facts Surrounding Kamburowski's Arrest**

89.     Kamburowski, his wife, and his attorney were waiting in Auletta's office when Kidd and Tituana entered the room to make the arrest.  Kidd Decl. ¶ 62.

90.     Upon entering the office, Kidd identified himself as a Deportation Officer and displayed his credentials.  Kidd Decl. ¶ 62.

91.     Kidd explained that Kamburowski had a final order of removal issued against him and was the subject of an outstanding Warrant of Removal/Deportation.  He then displayed the immigration judge's order of removal and informed Kamburowski that he would be placing him under arrest.  Kidd Decl. ¶ 62.

92.     At all relevant times, Kidd was not wearing a uniform but was dressed in street clothes.  Kidd normally does not wear a uniform in fulfilling his functions as a Deportation Officer.  Kidd Decl. ¶ 63.

93.     Although Kidd was armed at the time of the arrest, at no time during his encounter with Kamburowski did he draw or display my service weapon.  Kidd Decl. ¶ 63.

94.     Prior to Kamburowski's arrest, Kamburowski and his attorney, Michael P. DiRaimondo, denied knowledge that Kamburowski had been ordered deported in Arlington. Kidd Decl. ¶ 64.

95.     After learning that Kamburowski was going to be arrested, DiRaimondo grabbed Kamburowski's Australian passport from the table and refused to thereafter surrender it.  The purpose of this action was to delay Kamburowski's deportation because INS has to obtain travel documents before an alien can be deported.  Kidd Decl. ¶ 64; Exh. 1, at 11.

96.    DiRaimondo asked Kidd for an opportunity to review Kamburowski's immigration file.  Specifically, he asked for a copy of the Notice to Appear (Exh. 1, at 36-37). and of the immigration judge's final order of removal (Exh. 1, at 34).  Kidd Decl. ¶ 65.

97.    Kidd did not give Kamburowski's immigration file to DiRaimondo or to Kamburowski at any time, nor did he ever allow either of them to physically handle it.  Kidd Decl. ¶ 66.

98.    However, Kidd did accede to DiRaimondo's request to review the Notice to Appear and the final order of removal, and DiRaimondo reviewed those documents in Kidd's presence.  Kidd Decl. ¶ 66.

99.    DiRaimondo asserted to Kidd that the address on the Notice to Appear was not Kamburowski's correct address at the date that the Notice to Appear had been sent.  Kidd Decl. ¶ 67.

100.    While this circumstance may be relevant in the context of a motion to reopen filed with an immigration judge or an appeal before the BIA, there was no indication in the file that such a motion or appeal was pending or had ever been filed.  Kidd Decl. ¶ 67.

101.    In the presence of a signed final order of removal and a signed Warrant of Removal/Deportation, the alleged circumstance regarding the address on the Notice to Appear (even if true) is irrelevant to the decision whether to execute the removal order and arrest the fugitive alien.  Kidd Decl. ¶ 67.

102.    Nothing in the file suggests that the Notice to Appear had been returned to the INS as undeliverable or improperly addressed.  Kidd Decl. ¶ 67.

103.    Glancing at the file while Kidd was holding it, DiRaimondo drew Kidd's attention to an envelope in the file that he said looked like it had been returned to INS.  Kidd Decl. ¶ 68.

104. This envelope did not contain any documents at that time, and Kidd was not aware of what if any documents the envelope had contained in the past. Kidd Decl. ¶ 68.

105. Kidd did not look through the file to see what documents had been returned in this envelope because it was not relevant to his decision to execute the removal order and arrest the alien absconder. Kidd Decl. ¶ 68.

106. DiRaimondo also asked Kidd if the file contained a notice to surrender, or "bag and baggage" letter (Form I-166). Kidd Decl. ¶ 69.

107. The file does contain such a notice. Exh. 1, at 30.

108. However, Kidd does not recall looking through the file specifically for a notice to surrender at the time of Kamburowski's arrest, and does not recall seeing the notice (Exh. 1, at 30) on the date of the arrest. Kidd Decl. ¶ 69.

109. A Notice to Surrender is not an important component of an immigration file because the INS is not obligated to provide an alien with notice that he has been ordered deported. Kidd Decl. ¶ 69.

110. Kidd did not further investigate DiRaimondo's allegations that Kamburowski had not received the final order of removal or other documents. Kidd Decl. ¶ 70.

111. While these allegations may be relevant in the context of a motion to reopen filed with an immigration judge or an appeal before the BIA, such allegations (even if true) are irrelevant to the decision whether to arrest the fugitive alien, in the presence of a signed final order of removal and a signed Warrant of Removal/Deportation. Kidd Decl. ¶ 70.

112. It is the function of the immigration judge, not the Deportation Officer, to investigate and review allegations of this nature. Kidd Decl. ¶ 70.

113. Kidd had confirmed the existence of a valid, signed Warrant of Removal/Deportation and a valid, signed final order of removal, and this was all the probable cause that was necessary to take the fugitive alien immediately into custody. Kidd Decl. ¶ 70.

114. Arguments and allegations that the alien might wish to raise before an immigration judge or the BIA in the context of a motion to reopen or an appeal are not germane to the decision whether to arrest the alien on the basis of the outstanding warrant. Kidd Decl. ¶ 70.

115. After discussing the file with DiRaimondo, Kidd contacted his supervisor, Cyril Lopez, and informed him that DiRaimondo had asked to receive copies of the Notice to Appear and the final order of removal. Lopez told Kidd that Kamburowski would have to file a request under the Freedom of Information Act to obtain copies of the documents in the file. Kidd Decl. ¶ 71.

116. Kidd allowed Kamburowski and his wife to talk privately for a while before he proceeded to place Kamburowski under arrest. Kidd Decl. ¶ 72.

117. After giving Kamburowski a quick pat-down, Kidd removed all valuables from his person. Kidd Decl. ¶ 73.

118. Consistent with the standard procedures and techniques used in effecting the arrest of wanted fugitives, and consistent with Kidd's experience and training in arresting fugitives, Kidd then placed metal handcuffs on Kamburowski, with his hands held out in front of his body, and placed a belly chain around Kamburowski's waist. Kidd Decl. ¶ 73.

119. The arrest was without incident. Kidd Decl. ¶ 73.

**Events After Kamburowski's Arrest**

120. After arresting Kamburowski, Kidd transported him to the ICE district office on the 9th Floor of 26 Federal Plaza in Manhattan for processing. Kidd Decl. ¶ 74.

121. After arrival at 26 Federal Plaza, Kamburowski was processed pending assignment to a detention facility. During processing, Kamburowski's handcuffs were removed, and his fingerprints and photo were taken. Also, his biographical information was updated in the DACS system. Kidd Decl. ¶ 75.

122. All the data generated during Kamburowski's arrest and processing was memorialized in a Record of Deportable/Inadmissible Alien (Form I-213). This form was prepared at 26 Federal Plaza and added to Kamburowski's immigration file. Kidd Decl. ¶ 76; Exh. 1, at 14.

123. Kidd also prepared and signed a Record of Deportable Alien (Form I-203), which accompanies a detainee to the facility where he will be held. This, too, was placed in the file. Kidd Decl. ¶ 76; Exh. 1, at 12.

124. Kidd also added fingerprints, photographs, and several DACS and CIS printouts to Kamburowski's immigration file. Kidd Decl. ¶ 76; Exh. 1, at 13, 15-23.

125. During the entire time that Kamburowski was being processed at 26 Federal Plaza, which amounted to approximately one to two hours, Kamburowski's immigration file was either in Kidd's direct possession or in Kidd's office. Kidd Decl. ¶ 77.

126. Kidd temporarily removed the Notice to Appear, the final order of removal, and the Warrant of Removal/Deportation while the file was at Federal Plaza, in order to make copies for a "work" file. The work file was then turned over to Kidd's deportation assistant, after the original documents had been returned to the immigration file. Kidd Decl. ¶ 77.

127. Kidd never at any other time removed any other documents from Kamburowski's immigration file. Kidd Decl. ¶ 77.

128. Having completed Kamburowski's processing at 26 Federal Plaza, Kidd personally transported him to what was then called the Wackenhut Detention Center in Queens, New York ("Wackenhut"). Kidd Decl. ¶ 78.

129. At the time, Wackenhut (a privately operated detention facility) was the only immigration detention facility in New York City, and it only housed non-criminal aliens. Kidd Decl. ¶ 78.

130. The only occupants of the vehicle in which Kamburowski was transported to Wackenhut were Kidd, Kamburowski, and possibly another alien. Another officer followed Kidd's vehicle to Wackenhut. Kidd Decl. ¶ 78.

131. Once Kidd and Kamburowski arrived at Wackenhut, Kidd escorted Kamburowski inside and turned him over to the guards. Kidd Decl. ¶ 79.

132. Kidd remained at Wackenhut a maximum of 10 minutes. Kidd Decl. ¶ 79.

133. Kidd brought Kamburowski's entire immigration file with him to Wackenhut and either left it in the "in-bin" for eventual routing to the deportation officer assigned to the case or else handed it directly to a deportation officer. Kidd Decl. ¶ 80.

134. After transporting Kamburowski to Wackenhut, Kidd had no further contact with Kamburowski, except that Kamburowski was in attendance during Kidd's deposition on September 13, 2006. He was not involved in any decisions or actions relating to Kamburowski's detention, bond, or release, or relating to his immigration status or the reopening of his removal proceedings. Kidd Decl. ¶ 81.

135. On January 24, 2004, Kamburowski, through counsel, filed a motion to reopen the December 2000 removal proceedings and to change venue from Arlington, Virginia, to the immigration court in New York. Am. Compl. ¶ 26; Answer ¶ 26; Exh. 1, at 82.

136. On February 6, 2004, Immigration Judge J. Milo Bryant in Arlington granted the motion to reopen and changed venue to New York. Answer ¶ 27; Exh. 1, at 5-6, 79, 91.

137. On February 17, 2004, Immigration Judge Steven Abrams conducted a bond hearing for Kamburowski at the Wackenhut Detention Center. He ruled that Kamburowski could be released from ICE custody upon posting a bond of $7,500; ICE had recommended a bond of $20,000. Answer ¶¶ 29, 30; Exh. 1, at 3-4, 78.

138. On February 20, 2004, Kamburowski's wife posted the bond, and Kamburowski was released from ICE custody at Wackenhut. Am. Compl. ¶ 31; Exh. 1, at 2, 9.

139. On July 16, 2004, in Jamaica, New York, an immigration judge conducted a master calendar hearing on Kamburowski's removal proceedings. The immigration judge determined that Kamburowski had not received actual notice of the May 31, 2001, scheduled hearing before the immigration court in Arlington. Exh. 1, at 56.

140. On July 16, 2004, the immigration judge terminated without prejudice the removal proceedings that had commenced with the filing of the December 2000 Notice to Appear, and vacated the final order of removal entered in absentia in May 2001, with an indication that Kamburowski had not received actual notice of the removal proceedings. ICE waived appeal. Exh. 1, at 1, 53.

**Other Facts**

141.  The case caption describes defendant John Carbone as "Acting Field Director, U.S. Immigration and Customs Enforcement." Am. Compl., at p. 1.

142.  Carbone is not currently the Acting Field Director for ICE. He retired from ICE at least two years ago and no longer works for the agency. Kidd Decl. ¶ 83.

143.  At some point in time, Carbone did serve as Acting Field Director for ICE's New York Field Office, but he did not serve in that capacity as of January 22, 2004, the date on which Kidd arrested Kamburowski. Kidd Decl. ¶ 83; Answer ¶ 5.

144.  As of January 2004 the position of Field Director, or Acting Field Director, was at least four levels above Kidd in the supervisory chain of command within ICE's New York Field Office. The incumbent in that position would have been in charge of the entire deportation and removal program for the New York District. Kidd Decl. ¶ 84.

145.  Kidd did not have any conversations with Carbone, or with any Field Director or Acting Field Director, either on January 22, 2004, or on any other date, about Kamburowski or about the basis for or circumstances surrounding his arrest. Kidd Decl. ¶ 84.

146.  Neither Carbone nor any Field Director or Acting Field Director was ever involved in any way in either the decision to arrest Kamburowski or in the actual arrest or processing of Kamburowski. Kidd Decl. ¶ 84.

147.  Kidd and Carbone were acting in the course and scope of their employment with U.S. Immigration and Customs Enforcement at all relevant times and with respect to all events and circumstances alleged in the Amended Complaint. Exh. 2.

148.  On June 30, 2005 – 132 days after the complaint was filed in this action – Kamburowski, through counsel, filed a Standard Form 95 Claim for Damage, Injury, or Death, with U.S. Immigration and Customs Enforcement.  Exh. 3, at 10-11.

149.   Neither plaintiff had ever filed an administrative tort claim with U.S. Immigration and Customs Enforcement or with any other agency, at any time prior to June 30, 2005, relating to or arising out of Kamburowski's January 22, 2004, arrest and subsequent detention.  *See* Complaint.

150.  The administrative tort claim was signed and filed only by Kamburowski.  Exh. 3 at 10; Am. Compl. ¶ 37.  Plaintiff Gina Kamburowski has never filed an administrative tort claim with U.S. Immigration and Customs Enforcement or with any other agency, at any time, relating to or arising out of Kamburowski's January 22, 2004, arrest and subsequent detention.  *See* Am. Complaint.

151.  On July 22, 2005, ICE advised Kamburowski that his administrative claim was incomplete and requested that additional materials be submitted in support of the claim. Exh. 3 at 13-14.

152.  Kamburowski did not submit the requested materials until after October 5, 2005. Exh. 3 at 15.

153.  On October 18, 2005, ICE advised counsel for Kamburowski that it was denying Kamburowski's administrative tort claim.  Exh. 3 at 16.

Dated: Brooklyn, New York
November 2, 2007

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-2776

By:  /s/ {FILED ELECTRONICALLY}
F. FRANKLIN AMANAT  (FA6117)
Assistant United States Attorney
Eastern District of New York
(718) 254-6024