**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**------------------------------------------------------ X**

**Michael KAMBUROWSKI et ux.,**
        **Plaintiffs,**

   **- against -**

**Michael KIDD, et al.,**
        **Defendants.**

**CV -05 -0953 (BCA/RLM)**
**(Amon, J.)**
**(Mann, M.J.)**

**------------------------------------------------------ X**

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS**

**Michael P. DiRaimondo, Esq.**
**DiRaimondo & Masi, LLP**
**Attorneys for Plaintiffs**
**401 Broadhollow Road, #302**
**Melville, New York 11747**
**(631) 777-5557**

## STATEMENT OF FACTS

Plaintiff Michael Kamburowski, a native and citizen of Australia, who arrived in the United States as a visitor for pleasure on or about January 23, 1995. He and his wife Gina Kamburowski were married on or about June 14, 2001. On or about May 31, 2002, Plaintiff Gina Kamburowski filed a Petition for Alien Relative, Form I-130, on behalf of her husband, Michael Kamburowski with the New York District Office of the U.S. Citizenship & Immigration Service ("USCIS"). Mr. Kamburowski filed an Application for Adjustment of Status, Form I-485, in conjunction with the Petition for Alien Relative.

Mr. and Mrs. Kamburowski were thereafter scheduled to appear for an adjustment of status interview on January 22, 2004, at the Garden City office of USCIS located at 711 Stewart Avenue, Garden City, New York. They appeared with their attorney, Michael P. DiRaimondo, at this interview.

During the interview, Mr. Kamburowski was informed by the District Adjudications Officer ("DAO") conducting the interview, Valeri Auletta, that a prior order of removal was on file in his case. After stating this was the case, DAO Auletta called in two (2) Deportation & Detention Officers, Mr. Michael Kidd, and a then unknown officer later learned to be Immigration Enforcement Agent ("IEA") Luis Tituana. Both Mr. DiRaimondo, and Mr. Kamburowski stated that they were not aware that Mr. Kamburowski had been ordered deported. After being informed via telephone by Defendant Kidd that INS did not have proper service on Plaintiff Kamburowski, a then unknown Supervisory Deportation Officer, Cyril Lopez , improperly ordered the immediate arrest of Plaintiff Michael Kamburowski.

Mr. Kamburowski, was then placed in handcuffs and arrested in front of DAO

Auletta, Mr. Kamburowski's wife, Plaintiff Gina Kamburowski, and their attorney Mr. DiRaimondo. Mr. Kamburowski was then transported to the ICE office at 26 Federal Plaza, New York, New York, for processing. He was then taken to the then Wackenhut Detention Center, located in Queens, New York.

Immediately upon discovering the improper *in absentia* order, Mr. Kamburowski filed a motion to reopen the *absentia* Order on or about January 26, 2004, with the EOIR in Arlington, VA, and requested a change of venue to the EOIR located at the Wachenhut Correctional Facility in Jamaica, New York, ("Wachenhut"), where he was being improperly detained by the USICE.

As outlined in the motion, unbeknownst to Mr. Kamburowski, he had allegedly been previously placed under removal proceedings on or about January 3, 2001. The Notice to Appear ("NTA"), which is the charging document in removal proceedings, was allegedly mailed by regular mail to his previous address, which was no longer valid, at 2001 N. Adams Street, Arlington, VA. Since this address was no longer valid, the NTA was returned to the INS by the U.S. Postal Service. Defendants had also allegedly issued a "Surrender Notice" which was mailed to the Respondent at another invalid address at 3202 Pershing Drive, Arlington, VA, and was also returned as "undeliverable." Mr. Kamburowski never received the NTA or any other document informing him that he had was being placed under removal proceedings, or any document that he had to appear for a removal hearing, or any document that he had been removed in his absence.

Plaintiff Michael Kamburowski previously resided at 3202 N.Pershing Drive, Arlington, VA, between January 1995 and July 1995. He lived at 2001 North Adams Street, Arlington, VA, from February 1997 and April 1998. This was the address that the NTA was

mailed to by regular mail on or about January 3, 2001. Mr. Kamburowski had not lived at this address since April 1998. and he had properly notified the INS of his correct addresses continuously during this period.

Mr. Kamburowski was previously married to Ms. Terri Lynn Sweat, a U.S. citizen, from February of 1997 to April of 1998. As a result of their marriage, a Petition for Alien Relative, Form I-130, and Application for Adjustment of Status, Form I-485, was filed with the former INS in Arlington, Virginia, on October 30, 1997. Mr. Kamburowski and his first wife were divorced on April 8, 1998, and he moved to 1613 Harvard Street, N.W., Washington, D.C. He notified INS of his new address by the filing of Form I-751, Petition to Remove Conditions on Residence on December 9, 1998. The INS, in fact, responded on two occasions to Mr. Kamburowski at his new address. Thereafter, he received no further communication from INS.

The motion to reopen was unopposed by Defendant DHS. The Immigration Judge ("IJ") reopened the matter and changed venue to the EOIR located at Wachenhut Correctional Facility in Jamaica, New York. Thereafter, the IJ at Wachenhut scheduled the matter for a bond hearing on February 17, 2004. On February 17, 2004, IJ Steven Abrahams conducted a bond hearing regarding Mr. Kamburowski. Defendants DHS opposed release on bond and claimed that Mr. Kamburowski would be a "flight risk." As a result, IJ Abrahams set the bond at $7,500.00, which Mrs. Kamburowski paid. Mr. Kamburowski was released by Defendants on or about February 22, 2004. He was detained for twenty-nine (29) days. In reopened proceedings, Mr. Kamburowski's application for adjustment of status was approved.

As a result of the actions of the Defendants, Mr. Kamburowski was illegally and

unlawfully detained and imprisoned from January 22 until February 22, 2004, by the Defendants. During that time, Plaintiff Gina Kamburowski lost the society and services of her husband Michael Kamburowski from January 22 to February 22, 2004. Plaintiffs both endured severe emotional stress and embarrassment during the time of and as a result of this improper detention. In addition, they endured significant financial hardship in the form of lost wages during the time of and as a result of Mr. Kamburowski improper detention. Mr. Kamburowski ultimately lost his employment as a result.

Mr. Kamburowski filed an administrative claim under the Federal Tort Claims Act ("FTCA") with the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") and on October 17, 2005, ICE denied the claim.

## ARGUMENT

**THE GOVERNMENT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT SHOULD BE DENIED**

The government's motion to dismiss and/for summary judgment should be denied. To the extent that the government's motion is treated as one to dismiss under Rule 12, the plaintiffs' allegations must be accepted as true and all reasonable inferences from those allegations must be drawn in plaintiffs' favor. *See, e.g.,* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232 (1974); Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) ("We accept as true the factual allegations of the complaint and we read it liberally drawing all reasonable inferences in favor of the plaintiff"); Yusuf v. Vassar College, 35 F. 3d 709, 713 (2d Cir. 1994). In the event the motion is treated as one for summary judgment, the evidence must be construed, "in the light most favorable to the [plaintiffs]," all plaintiff's evidence must be taken as true, and all reasonable inferences

drawn in the plaintiffs' favor. Russo v. City of Bridgeport, 479 F.3d 196, 200 (2d Cir. 2007), cert. denied, 128 S.Ct. 1009 (2007). Moreover, cases such as the present litigation involving both serious allegations of violations of constitutional rights and claims involving state of mind are especially unsuitable for disposition on summary judgment, as one distinguished treatise has wisely noted.. 10B Wright, Miller & Kane, Modern Federal Practices §2372.2 at 152 (2007).

### A. The Government's Federal Tort Claims Arguments Have No Merit

The government attacks the claims for relief under the Federal Tort Claims Act ("FTCA") both for an alleged failure to comply with the claim presentation requirement and on the merits. Neither assault has any merit.

### 1. The FTCA Claim Presentation Requirements Were Satisfied

For the first time in the case, the government, contrary to the position taken before Magistrate Mann during pretrial proceedings over two years ago, now argues that there was not proper compliance with the claim presentation requirements under 28 U.S.C. §2675, *citing* McNeil v. United States, 508 U.S. 106 (1993). Memorandum of Law In Support Of Defendants' Motion Dismiss The Amended Complaint Or, In The Alternative, For Summary Judgment ("GMem.") at 7—10. Yet the present case, which began as a Bivens action on against Michael Kidd and others differs radically from McNeil. Thus McNeil was commenced against the United States without filing the required administrative claim in accordance with 28 U.S.C. §2675, a situation under settled legal principles that meant the District Court had no subject matter jurisdiction in the first place. By contrast here, when this action was commenced only against defendant Kidd and others, subject matter

( 5 )

jurisdiction plainly existed.[1]

In short, unlike McNeil, this case simply does not involve an effort to proceed against the United States in a case where subject matter jurisdiction was lacking in the first place. Thus under the plain language of 28 U.S.C. §2675 the plaintiffs did not institute an action against the United States prior to filing the required administrative claim, thus making McNeil wholly inapposite here. Under these circumstances, the government's argument reduces to the absurd contention that a plaintiff who does not prematurely commence an action against the United States before filing an administrative tort claim still cannot add the United States as a party to an existing action after the administrative tort claim has been denied, but must, instead, commence a new action within the limitations period mandated by 28 U.S.C. §2401(b). Neither McNeil nor controlling precedent in the Second Circuit compels such an absurd result nor is such a result rationally related to the administrative claim requirement enacted by Congress. *Compare,* Hyatt v. United States, 968 F.Supp. 96 (E.D.N.Y. 1997) (assuming amended complaint timely filed after denial of administrative tort claim would be proper). In short, the government's newly minted position would seem to run afoul of Judge Friendly's sage observation that "Congress is free, within constitutional limitations, to legislate eccentrically if it should wish, but courts should not lightly assume it has done so. J.C. Penney Co. v. Commissioner of Internal Revenue, 312 F.2d 65, 68 (2d Cir. 1962).

Indeed, the government itself took no such position during pretrial proceedings. Thus at the first pretrial conference before Magistrate Mann on July 6, 2005, both sides

---

[1] The United States Attorney's office did not certify that the named individual defendants were acting in their official capacities until June 20, 2005. Docket Sheet, entry 6.

requested that this case be stayed pending submission and adjudication of an administrative tort claim. Docket Sheet, Item 7. Likewise, by letter dated July 20, 2005, the government itself submitted the parties' joint request that this case be placed on suspense pending adjudication of the administrative tort claim with a time set for filing an amended complaint after any denial of the administrative claim. Docket Sheet, Item 8. Moreover, the amended complaint was then timely filed, as directed by Magistrate Mann within six months of the denial of the administrative claim as required by 28 U.S.C. §2401(b). Under these circumstances, should this Court accept the government's reversal of course and hold that an entirely new filing was required after the denial of the administrative claim, then the requirements 28 U.S.C. §2401(b) should be equitably tolled to permit such a filing given the government's conduct here. Indeed, Hyatt endorses such equitable tolling under circumstances quite similar to those presented here, where, as in this case, the government gave every indication both to plaintiffs' counsel and the Magistrate, that an amended complaint should suffice.

### 2. The FTCA Claims Should Not Be Dismissed Before Trial

In attacking the state law claims under the FTCA, the government falls into serious error. First, as the plain language the FTCA confirms and as the Second Circuit reiterated in the Caban v. United States, 728 F.2d 68 (2d Cir. 1984), the proper test for determining liability under the FTCA is the most analogous state law claim, with Caban itself recognizing as matter of New York law that there would be claim for negligence in the continued detention of even someone seeking entry at the border. Second, in this connection, moreover, the government fails to recognize that detention for immigration purposes, as will all immigration proceedings is a civil not a criminal proceeding, a time

honored distinction usually invoked by the government. *See, e.g.,* Lehaman v. United States, 353 U.S. 685, 690 (1957); Harisiades v. Shaughnessy, 342 U.S. 580 (1952). Accordingly, the government's reliance upon false arrest cases from the criminal context is simply misplaced, and, instead, analysis should focus upon damage claims in the civil detention context.

Here, Laughing v. Power Authority of the State of New York, 68 AD2d 585,418 N.Y.S.2d 676 (3d Dept. 1979) (emphasis in original), should be dispositive in holding as a matter of New York law that "*Public policy requires a strict conformity with statutory procedures for the civil arrest of civil litigants.*" In that case, as here, civil proceedings had been instituted without proper service upon the litigants who were subsequently arrested based upon a civil attachment in those proceedings. Similarly here the civil removal proceeding against Mr. Kamburowski was instituted without service upon him, as an Immigration Judge conclusively determined later, vacating the removal order. Moreover, here the arresting officer, Mr. Kidd had ample knowledge of this fundamental defect, a knowledge that certainly should not be rejected on summary judgment. Furthermore, the government cites no case that in light of Caban holds that a private person is privileged to detain another based upon proceedings the would be jailer knows to be defective.

Furthermore, even accepting the relevance of the criminal law precedents, this case presents that hopefully rare instance, unlike any case cited by the government, where the arresting officer had concrete, direct knowledge of the underlying defect in the proceedings but imprisoned Mr. Kamburowski anyway, absent any threat to public safety, thus separating him from his United States citizen spouse. In this connection, moreover, the government overlooks an essential element of the warrant presumption of probable cause, which requires

that "[a]n arrest made pursuant to a warrant valid on its face and issued by a court having *jurisdiction of the crime and person* is privileged and this is so even though the process may have been erroneously or improvidently issued." Boose v. City of Rochester, 71 AD2d 59, 421 N.Y.S.2d (4th Dept. 1979). Yet this is precisely what happened here with an Immigration Court having no jurisdiction because notice was not properly given, then issuing a removal order, facts that were, again, well known to Officer Kidd. Alternatively, as Boose makes clear, a claim for malicious prosecution has also been made out here and should not be dismissed on summary judgment.

In addition, even accepting as correct the government's apparent contention that the legality of Mr. Kamburowski's arrest must be judged according to federal law, the applicable provisions strongly support Mr. Kamburowski and not the government. Thus 8 U.S.C. §1231(a)(1) defines a removal period as applicable here to mean 90 days from when a removal order becomes administratively final, which was in May 2001. In turn, 8 U.S.C. §1231(a)(2) prescribes detention only during that 90 period for non-criminal aliens such as Mr. Kamburowski, a period that expired in August 2001. After expiration of the removal period, the statute provides only for supervision. 8 U.S.C. §1231(a)(3). Moreover, 8 C.F.R. §241.3, cited by the government, does not purport to modify these statutory limitations. Accordingly, even operating within the government's framework, the arrest and imprisonment of Mr. Kamburowski, almost three years after expiration of the removal period, violated applicable immigration law. Furthermore, even if his initial arrest were considered legal, his continued detention, when the impropriety of the original removal order should have become obvious, should provide a separate basis for liability. *Cf.,* Gilles v. Repicky, 511 F.3d 239 (2d Cir., Dec. 21, 2007); Russo, *supra*, recognizing separate Fourth

Amendment claim for continued detention despite arrest on probable cause where exculpatory evidence ignored).

### B. The Bivens Claims Should Not Be Dismissed Before Trial

Despite the government's elaborate argument on not allowing a Bivens claim here, GMem. at 21—29, this entire contention founders on the undeniable reality that Bivens v. Six Unknown Against of the Federal Bureau of Investigation, 403 U.S. 388(1971), itself created a claim for Fourth Amendment violations by federal agents, that the Supreme Court has not overruled Bivens and that Congress itself has not legislatively abrogated Bivens claims for Fourth Amendment violations. Furthermore, Congress has provided no separate compensation scheme or alternative remedy intended to supplant damage claims for Fourth Amendment violations by officers of what is now United States Immigration & Customs Enforcement. *Compare,* Bivens, 403 U.S. at 395 ("Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty."); Turkmen v. Ashcroft, 2006 U.S. Dist. LEXIS 39170 at 18 (E.D.N.Y. 2006) (Gleeson, J.), holding that this proffered exception to Bivens requires an alternative specifically substituted by Congress and noting that, as here, ". . . the defendants point to no evidence that the Congress gave thought to what remedies should be available when immigration officials. . . unconstitutionally detain an alien after he has been ordered removed." While the government falls flat on explaining how a damage remedy might adversely impact our foreign relations with either Mr. Kamburowski's native Poland or his adopted country of Australia, the government overlooks the fact that this case implicates the rights of an American citizen, Mr. Kamburowski's wife, from whom he was separated by his arrest and detention. *See* Russo, which recognizes adverse impact on family from prolonged detention.

Moreover, as Turkmen, 2006 U.S. Dist. LEXIS 39710 at 18 notes the right to be free from unconstitutional search and seizure represents a protection available to aliens and citizens alike. *See also,* Elmaghraby v. Ashcroft, 2005 U.S. Dist. LEXIS 2143 (E.D.N.Y. 2005) (Gleeson, J.) rev'd on other grounds, 490 F.3d 143 (2d Cir. 2007) (rejecting events of September 11, 2001 as "special factor" limiting Bivens actions).[2]

Equally without merit is the government's reliance upon 8 U.S.C. §1226(e), which by its plain terms, is limited to judicial review of detention pursuant to this section and says nothing about detention after a removal order. Likewise in invoking upon 8 U.S.C. §1252(g), the government reads this provision far too broadly contrary the admonition of the Supreme Court in Reno v. Arab-American Discrimination Committee, 525 U.S. 471 (1999) ("AADC") and the sound holding in Arar v. Ashcroft, 414 F.Supp.2d 250 (E.D.N.Y. 2006). Furthermore, unlike the plaintiff in Foster v. Townsley, 243 F.3d 210 (5th Cir. 2001), who was actually deported, the plaintiffs here challenge Mr. Kamburowski's prolonged detention. See also Turkmen, 2006 U.S. Dist. LEXIS 39170 at 17, which recognizes that detention before execution of removal order, following *AADC*, does not fall within 8 U.S.C. §1252(g).

Turning to the merits, the Bivens claim here follows both Russo and Gilles, for Mr. Kamburowski was subject to prolonged detention in knowing disregard of exculpatory evidence confirming that the entire basis for his detention was void. If that were not enough, moreover, this continued detention also violated the plain language of 8 U.S.C. §1231. In short, what happened here, contrary to the Fourth Amendment was detention in clear violation of the law, one that plainly overcomes the claim of qualified immunity. *See,* Gilles. Significantly the government expressly concedes that ". . . the analysis of whether

---

[2]  The government did not appeal this aspect of Judge Gleeson's decision. 490 F.3d at 152.

Kamburowski has adduced evidence sufficient to overcome Kidd's qualified immunity with regard to a claim of a Fourth Amendment violation is essentially the same as the analysis of whether he can sustain a claim against the United States for the common law torts of false arrest and false imprisonment." GMem. at 35. Yet, as made clear, Kidd's arrest and continued detention of Mr. Kamburowski was certainly not privileged given the absence of jurisdiction to issue a removal order and the overwhelming evidence that Mr. Kidd knew this was the case.

## CONCLUSION

For all of the above reasons, the government's motion should be denied.

Dated: New York, New York
February 19, 2008

                DiRAIMONDO & MASI

                BY: _____/s/_____
                      MICHAEL P. DiRAIMONDO
                      MD 1333
                      401 Broadhollow Road, #302
                      New York, New York 10278
                      (631) 777-5557

                      _____/s/_____
                      THOMAS E. MOSELEY
                      TM3371
                      One Gateway Center--Suite 2600
                      Newark, New Jersey 07102
                      (973) 622-8176
                      Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------- X

Michael KAMBUROWSKI et ux.,
      Plaintiffs,

    - against -

Michael KIDD, et al.,
      Defendants.

CV -05 -0953 (BCA/RLM)
(Amon, J.)
(Mann, M.J.)

---------------------------------------------------- X

Marialaina L. Masi, hereby declares:

1. I am an attorney, duly authorized to practice law in the State of New York.

2. On February 19, 2008, I served a true and correct copy of the Motion Information Sheet and Declaration of Michael P. DiRaimondo, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, 401 Broadhollow Road, Melville, New York, location addressed to the following:

    F. Franklin Amanat Esq.
    Assistant United States Attorney
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, New York 11201

I certify that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  February 19, 2008
         Melville, New York

                                      Marialaina L. Masi