UNITED STATES DISTRICT COURT                    FA6117
EASTERN DISTRICT OF NEW YORK

_____
                                              )
Michael KAMBUROWSKI *et ux.*,                 )
                                              )
                    *Plaintiff*,              )   No. 05-CV-0953 (CBA/RLM)
*v.*                                          )
                                              )   (Amon, J.)
Michael KIDD, Deportation Officer, U.S.       )   (Mann, M.J.)
Immigration and Customs Enforcement, and      )
John CARBONE, (former) Acting Field           )
Director, U.S. Immigration and Customs        )
Enforcement,                                  )
                                              )
                    *Defendants*.             )
_____       )


REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT,
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

BENTON J. CAMPBELL
United States Attorney

F. FRANKLIN AMANAT (FA6117)
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-2776
(718) 254-6024
franklin.amanat@usdoj.gov

*Attorneys for Defendants*

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................ iii

PRELIMINARY STATEMENT.............................................. 1

REPLY TO STATEMENT OF FACTS....................................... 2

REPLY ARGUMENT..................................................... 7

    I.    UNDER THE FTCA, THE COURT MUST DISMISS ALL OF THE COMMON LAW
        TORT CLAIMS ASSERTED IN THE COMPLAINT........................... 7

        A.    Kamburowski Failed to Exhaust His Administrative Remedies Prior
                to Filing Suit, Necessitating Dismissal of the FTCA Claims for
                Lack of Jurisdiction........................................... 7

        B.    The FTCA Claims Must Be Dismissed for Lack of Jurisdiction,
                Because Kamburowski Has Failed to Articulate Any Basis for
                Government Liability Under Applicable Law...................... 11

    II.   KAMBUROWSKI HAS FAILED TO ARTICULATE A LEGITIMATE BASIS ON
        WHICH HIS *BIVENS* CLAIMS CAN SURVIVE SUMMARY JUDGMENT........... 16

CONCLUSION......................................................... 19

EXCERPTS FROM THE DEPOSITION OF MICHAEL J. KAMBUROWSKI.............. Exhibit 6

**Pages**

CASES

*Adams v. HUD*, 807 F.2d 318 (2d Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28 (1st Cir. 2006). . . . . . . . . . . . . 10

*Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). . . . . . . . . . . . . 3

*Bush v. Lucas*, 462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Caban v. United States*, 728 F.2d 68 (2d Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Chappell v. Wallace*, 462 U.S. 296 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999), *cert. denied*, 530 U.S. 1261 (2000). . 18

*Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). . . . . . . . . . . . . . . . . . . . . 10

*Keene Corp. v. United States*, 700 F.2d 836 (2d Cir.), *cert. denied*, 464 U.S. 864 (1983). . . . 10

*Kontrick v. Ryan*, 540 U.S. 443 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379 (1884). . . . . . . . . . . . . . . . . . . . . . . 10-11

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). . . . . . . . . . . . . 3

*McNeil v. United States*, 508 U.S. 106 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994). . . . . . . . . . . . . . . . . . 10

**Page**

*Schweiker v. Chilicky*, 487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tenorio v. Murphy*, 866 F. Supp. 92 (E.D.N.Y. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Turkmen v. Ashcroft*, No. 02-CV-2307, 2006 WL 1662663 (E.D.N.Y. June 14, 2006). . . . . 17

*Wilkie v. Robbins*, 127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

S<span style="font-variant:small-caps">TATUTES</span>

8 U.S.C. § 1226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8 U.S.C. § 1231(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
8 U.S.C. § 1252(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
8 U.S.C. § 1253. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8 U.S.C. § 1357(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
28 U.S.C. § 2401(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
28 U.S.C. § 2401(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
28 U.S.C. § 2675. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
28 U.S.C. § 2679(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

P<span style="font-variant:small-caps">ROCEDURAL</span> R<span style="font-variant:small-caps">ULES</span>

Fed. R. Civ. P. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Fed. R. Civ. P. 12(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
L.C.R. 56.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6-7

R<span style="font-variant:small-caps">EGULATIONS</span>

8 C.F.R. § 3.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8 C.F.R. § 241.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
8 C.F.R. § 287.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
8 C.F.R. § 287.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## Preliminary Statement

Plaintiff Michael Kamburowski's opposition fails to controvert any of the facts set forth in the defendants' Statement of Material Facts as to Which No Genuine Issue Remains to Be Tried ("Undisputed Facts"). Kamburowski has failed to submit a paragraph-by-paragraph response to the Undisputed Facts, as required by Fed. R. Civ. P. 56(e)(2) and L.C.R. 56.1(b). He has not accompanied his opposition with affidavits or any documentary evidence that would be admissible at trial, nor has he supported any of the allegations of fact contained in the body of his brief with a citation to admissible evidence, as required by L.C.R. 56.1(d) and Fed. R. Civ. P. 56(e)(1). For this reason alone, the Court must deem each paragraph in the Undisputed Facts to be admitted for purposes of this motion, *see* L.C.R. 56.1(c), and should enter summary judgment against Kamburowski. *See* Fed. R. Civ. P. 56(e)(2).

Kamburowski's responses to the defendants' legal arguments fare no better and indeed are entirely without merit. He argues that this Court has jurisdiction to entertain his common-law tort claims against the United States, by virtue of his allegedly timely presentment of an administrative tort claim, but he misrepresents the facts of this case and mischaracterizes the relevant law under the Federal Tort Claims Act ("FTCA"). His contention that he has a basis under state law to sue the United States for false arrest and false imprisonment is also flawed. Meanwhile, Kamburowski's response to the defendants' arguments for dismissing his *Bivens* claims fails to distinguish the numerous authorities cited by defendants and in any event is utterly without merit.

As elaborated below, the Court should reject Kamburowski's arguments in whole, dismiss his FTCA claims for lack of jurisdiction, and either dismiss his *Bivens* claims or else grant summary judgment as to those claims.

<u>**Reply to Statement of Facts**</u>

Defendants' motion was supported by a 153-paragraph Statement of Material Facts as to Which No Genuine Issue Remains to Be Tried, submitted pursuant to L.C.R. 56.1(a). As required by that rule, each paragraph of the Undisputed Facts set forth a citation to admissible evidence substantiating the factual averral in the paragraph. The Undisputed Facts were supported by a 22-page sworn declaration from defendant Michael Kidd, 157 pages of documentary exhibits, and 10 pages of sworn deposition testimony.

Kamburowski's opposition, by contrast, relies on a 3½-page "statement of facts" at the beginning of his brief. Pl. Opp. at 1-4. Within that statement of facts, there is not a single citation of any sort, much less a citation to evidence that would be admissible at trial. Kamburowski submitted no sworn declarations, no documentary exhibits, no deposition testimony, and no evidence of any kind in opposition to defendants' motion. Nor has he filed a paragraph-by-paragraph response to the Undisputed Facts, as required by Fed. R. Civ. P. 56(e)(2) and L.C.R. 56.1(b).

Kamburowski's failure to submit an evidentiary basis for opposing the defendants' motion requires that the motion be granted. *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *see also* L.C.R. 56.1(b), (c), (d). Succinctly stated, Kamburowski cannot demonstrate the existence of a genuine issue of material fact, sufficient to defeat a properly-supported motion

for summary judgment, simply by setting forth conclusory and entirely self-serving allegations in an unsworn, unsupported memorandum of law.[1]

Instead of laying a proper evidentiary foundation for his arguments, Kamburowski relies on tendentious statements of fact in his brief that, without attributing any evidentiary support whatsoever, purport to contradict statements in defendants' Undisputed Facts. Examples are numerous:

- "After being informed via telephone by Defendant Kidd that INS did not have proper service on Plaintiff Kamburowski, a then unknown Supervisory Deportation Officer, Cyril Lopez, improperly ordered the immediate arrest of Plaintiff Michael Kamburowski." Pl. Opp. at 1; *see, in contrast,* Undisputed Facts ¶¶ 69-88.

- "Since this address [2001 N. Adams Street, Arlington, VA] was no longer valid, the [Notice to Appear] was returned to the INS by the U.S. Postal Service." Pl. Opp. at 2; *see, in contrast,* Undisputed Facts ¶¶ 36-41, 56, 99-105.

- "Defendants had also allegedly issued a 'Surrender Notice' which was mailed to the Respondent at another invalid address at 3202 Pershing Drive, Arlington, VA, and was also returned as 'undeliverable.'" Pl. Opp. at 2; *see, in contrast,* Undisputed Facts ¶¶ 46-56, 103-09.

---

[1]    The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* facts." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As the court of appeals has explained, "while genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' materiality runs to whether the dispute matters, *i.e.*, whether it concerns facts that can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). In order for a plaintiff to defeat a defendant's motion for summary judgment, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The plaintiff, as the non-moving party, must do more than show that "the evidence is merely colorable" or that "there is some metaphysical doubt as to material facts." Rather, the non-moving party is obligated to come forward with specific facts that there is a genuine issue of fact requiring a trial. *Matsushita*, 475 U.S. at 586-87. Conjecture, speculation, or conclusory allegations simply will not suffice. *See, e.g.*, *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

- "Mr. Kamburowski had not lived at this address [2001 N. Adams Street, Arlington, Virginia] since April 1998, and he had properly notified the INS of his correct address continuously during this period." Pl. Opp. at 3; *see, in contrast*, Undisputed Facts ¶¶ 17-34, 42-43, 60-61.

- "Moreover, the arresting officer, Mr. Kidd, had ample knowledge of this fundamental defect [i.e., that the Notice to Appear had not been served on Kamburowski]." Pl. Opp. at 8; *see, in contrast*, Undisputed Facts ¶¶ 72-88, 99-114.

None of these statements finds even a scintilla of support in the summary judgment record, which perhaps explains why Kamburowski failed to cite any evidence in support of these statements. There is absolutely no evidence in the record that the Notice to Appear or any other document sent to Kamburowski in connection with his removal proceedings (with the possible exception of the Notice to Surrender) was returned to sender as undeliverable, nor is there any evidence that Kidd, at the time of Kamburowski's arrest, had any reason to believe that service of those proceedings on Kamburowski had been defective or improper or ineffective. *See* Undisputed Facts ¶¶ 17-43, 46-56, 60-61, 69-88, 99-114.

What is more, the notion that Kamburowski "properly notified" the INS of his correct address after he left 2001 N. Adams Street in April 1998 and thereafter kept it apprized of his whereabouts "continuously" (Pl. Opp. at 3) is flatly contradicted by Kamburowski's own sworn deposition testimony:

> Q    Did [your attorney] ever advise you as to any requirements to notify the former INS of your change of address?
>
> A    I don't think so. I don't – I don't think so.
>
> Q    How long did you stay at 2001 North Adams Street?
>
> A    From February 1997 until April 1998. . . .
>
> Q    And why did you leave there?

A       I left because my wife and I were splitting up and I was moving back into Washington, D.C.

Q       Where did you move to?

A       I moved to 1613 Harvard Street.  Or Harvard Place.  Harvard Place. Apartment 206.

Q       When you moved to 1613 Harvard Place, did you notify the U.S. Postal Service of your change of address?

A.      I did.

Q       When you moved to 1613 Harvard Place did you notify the former INS in any way of your change of address?

A       *Not formally* but I did receive correspondence from the INS at that address. . . .

Q       After 1613 Harvard where did you move to?

A       I moved to 2070 Belmont Road, Northwest, apartment 608 in Washington. . . .

Q       When you moved to 2070 Belmont, did you notify the former INS in any way of your change of address?

A       *Formally, no.  I don't think so.*

Q       Did you notify the former INS informally of your change of address to 2070 Belmont?

A       *No.* . . .

Q       Where did you move to next?

A       We moved to New York City [on June 22, 2001], the address was 11-15 St. Nicholas Avenue, apartment 5H, New York, New York, 10026. . . .

Q       When you moved to 11-15 St. Nicholas did you notify the former INS in any way of your change of address?

A       *Not formally* but we had filed paperwork with our new attorney which had that address on it. . . .

Q      From January 1995 until today, did you at any time become aware of any requirement to notify the former INS, now the Department of Homeland Security or DHS, of any [change in] one's address?

A      Yes.

Q      When did you learn of that?

A      In 2004 when I was incarcerated.

Q      How did you learn about it?

A      Just during the course of the whole ordeal.  I learned there is a form that you file with the former INS every time you move.

Q      Do you recall the name of the form?

A      No, I don't remember the name of the form but I have filed it since then, every time I've moved.

Deposition of Michael R. Kamburowski, March 9, 2007 (annexed as Exhibit 6) at 34:21-35:4, 35:25-36:16, 40:5-8, 40:14-24, 42:19-22, 44:24-45:4, 47:25-48:16 (emphasis added).

In view of Kamburowski's own sworn testimony, conclusory allegations like those found in Kamburowski's brief fail to satisfy Rule 11's admonition that "the allegations and other factual contentions [in the brief must] have evidentiary support." *See* Fed. R. Civ. P. 11(b)(3), (b)(4), (c).  *Cf. also* Order of Magistrate Judge Mann, March 29, 2007 (docket no. 26) ("Plaintiffs' counsel, Mr. DiRaimondo, assures the Court that he will not be testifying on plaintiff's behalf and that he has no personal knowledge of any contested facts.").

More to the point for present purposes, unsupported statements like those found in Kamburowski's brief are not sufficient to demonstrate the existence of a genuine issue of material fact, so as to defeat a properly-supported motion for summary judgment. *See supra* note 1.  The local rules of this Court require that "each numbered paragraph in the statement of material facts to be served by the moving party will be deemed to be *admitted*" where, as here,

the party opposing summary judgment fails to "specifically controvert[ said numbered paragraph] by a correspondingly numbered paragraph" in a responsive statement of disputed facts, submitted under L.C.R. 56.1(b). *See* L.C.R. 56.1(c) (emphasis added). Because Kamburowski has failed to submit a responsive statement as required by Rule 56.1(b), and because the allegations in his brief fail to cite to evidence which would be admissible, all of the paragraphs in the Undisputed Facts must be deemed admitted, and Kamburowski has no basis to contest summary judgment.

## Reply Argument

### I. Under the FTCA, The Court Must Dismiss All of the Common Law Tort Claims Asserted in the Complaint.

#### A. Kamburowski Failed to Exhaust His Administrative Remedies Prior to Filing Suit, Necessitating Dismissal of the FTCA Claims for Lack of Jurisdiction.

As elaborated in defendants's opening memorandum of law, most of the allegations and causes of action set forth in the Amended Complaint assert that Kidd and Carbone committed garden variety common law torts – namely, the torts of false arrest, false imprison- ment, malicious prosecution, and intentional infliction of emotional distress. Because Kidd and Carbone were indisputably acting in the course and scope of their employment with the federal government at the time they are alleged to have committed these torts, Kamburowski's common law tort claims are only actionable (if at all) against the sovereign, and the United States must be substituted for Kidd and Carbone as the only proper defendant against which such claims could have been brought. 28 U.S.C. § 2679(d)(1). Even with such substitution, Kamburowski was required to have complied with the jurisdictional prerequisites of the FTCA in order for this Court to properly take cognizance of his common law tort claims. 28 U.S.C. § 2679(d)(4).

Here, because Kamburowski failed to comply with the FTCA's requirement that an administrative tort claim be presented to the relevant agency for adjudication prior to the initiation of the suit, 28 U.S.C. § 2675, he cannot avail himself of the waiver of sovereign immunity that allows plaintiffs to sue the United States for common law torts under the FTCA, and the Court must dismiss his tort claims for lack of subject matter jurisdiction. *See* Def. Mem. at 5-13.

Kamburowski's responsive arguments are uniformly without merit. First, he argues that because the original complaint named only Kidd and Carbone as defendants in their individual capacities, and did not name the United States as a defendant, "subject matter jurisdiction plainly existed" at the time the case was filed. Pl. Opp. at 5-6. According to Kamburowski, because the Attorney General did not certify that Kidd and Carbone were acting in their official capacities until June 20, 2005, this is not a case, such as *McNeil v. United States*, 508 U.S. 106 (1993), in which a plaintiff filed a tort action against the United States prematurely, before presenting an administrative tort claim. Pl. Opp. at 6. Rather, Kamburowski says, he did not file a tort action against the United States until he filed an amended complaint after his belated administrative claim was denied. *Id*.

Kamburowski would have this Court believe that his initial complaint was not intended to set forth common law tort claims against the United States. Pl. Opp. at 5-7. But his complaint made clear that it was seeking damages both under *Bivens* and under "the laws of the State of New York." Compl. ¶ 1. It likewise made clear that Kidd and Carbone were federal employees acting in the course and scope of their federal employment. Compl. ¶ 5, 6. And the majority of the causes of action articulated in the complaint sound in common law tort. *See* Compl. ¶¶ 32-34, 40, 43, 45, 47, 55, 57, 58. As such, whether he is willing to admit it or not, his suit was, from the beginning, a common law tort action against the United States, and

barring proof that he complied with the jurisdictional prerequisites of the FTCA prior to filing suit, his tort claims must be dismissed. *See* 28 U.S.C. §§ 2401(a), 2675(a); *McNeil*, 508 U.S. at 112. Thus, far from being "radically different from *McNeil*," this case is on all fours with that precedent, insofar as this case was "commenced against the United States without filing the required administrative claim in accordance with 28 U.S.C. § 2675, a situation under settled legal principles that meant the District Court had no subject matter jurisdiction in the first place." Pl. Opp. at 5.

Kamburowski is correct that at the time the original complaint was filed, this Court had subject matter jurisdiction ***with respect to the putative Bivens-type claims asserted against Kidd and Carbone in their individual capacities.*** But simply because the Court had subject matter jurisdiction over the constitutional tort claims does not mean that it also had the power to hear his common law tort claims. As to those claims, Kidd and Carbone had absolute immunity from the moment the suit was filed. *See* 28 U.S.C. § 2679(d)(1); Def. Mem. at 6-7. Put otherwise, there was never a time when this Court had subject matter jurisdiction to hear Kamburowski's common law tort claims, whether asserted against Kidd and Carbone individually or against the United States as sovereign.

Kamburowski makes much of the fact that the Attorney General did not certify that Kidd and Carbone were acting in their official capacities until June 20, 2005. Pl. Opp. at 5-6 & n.6. However, that was the date on which the defendants answered the initial complaint, and the certification therefore took place at a very early stage of the litigation. What is more, the "commencement" of the suit against the United States does not occur when the Attorney General's certification is filed; rather, the suit is commenced when the initial complaint asserting common law tort claims is filed, and the filing of the certification causes the action to be deemed

to have been filed *ab initio* against the United States. *See* 28 U.S.C. § 2679(d)(1) ("Upon certification by the Attorney General that the defendant employee was acting with the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding *commenced upon such claim* in a United States District Court *shall be deemed an action against the United States* under the provisions of this title . . . and the United States shall be *substituted as the party defendant*." (emphasis added)); *see also McNeil,* 508 U.S. at 112; *Barrett ex rel. Estate of Barrett v. United States*, 462 F.3d 28, 37 (1ˢᵗ Cir. 2006) (FTCA action is "instituted" on the date on which the original complaint is filed). In any event, it is undisputed that Kamburowski did not even attempt to file an administrative tort claim with the Department of Homeland Security until June 30, 2005 – 10 days after the certification was filed – so it is not clear what he hopes to gain by this argument.

Kamburowski next appears to argue that the government should somehow be estopped from raising lack of exhaustion as a basis for dismissing his FTCA claims because, according to him, "the government itself took no such position during pretrial proceedings." Pl. Opp. at 6. This argument is wrong. As a threshold matter, the requirement that administrative remedies be exhausted prior to filing suit under the FTCA is jurisdictional in nature and cannot be waived, estopped, or otherwise abated. *See McNeil,* 508 U.S. at 112; *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *Adams v. HUD*, 807 F.2d 318, 321 (2d Cir. 1986); *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.), *cert. denied*, 464 U.S. 864 (1983); *Tenorio v. Murphy*, 866 F. Supp. 92, 98 (E.D.N.Y. 1994). Moreover, lack of subject matter jurisdiction is a defense which can be raised at any time before final judgment is rendered, even initially on appeal. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 576 (2004); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *Mansfield, C. & L.M.R. Co. v. Swan*, 111

U.S. 379, 382 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte*); Fed. R. Civ. P. 12(h)(3) ("*Whenever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").  And regardless of what actions the parties took during the course of the litigation, "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct." *Kontrick*, 540 U.S. at 456.[2/]

**B.**     **The FTCA Claims Must Be Dismissed for Lack of Jurisdiction, Because Kamburowski Has Failed to Articulate Any Basis for Government Liability Under Applicable Law.**

As elaborated in defendants' opening memorandum, even assuming *arguendo* that Kamburowski could somehow show that he exhausted his administrative remedies prior to filing suit, his FTCA claims must still be dismissed for lack of jurisdiction because he can make no showing that, under applicable law, the evidence in support of his complaint would sustain a cause of action for tort liability.  *See* Def. Mem. at 13-21.  Kamburowski has not even offered

---

[2/]     In any event, the notion that the government somehow failed to preserve the exhaustion defense, or that the defense is now being asserted "for the first time in the case," is simply wrong.  In the government's answer to the amended complaint, filed on December 15, 2005 (two months after Kamburowski received a final agency decision denying his untimely administrative tort claim), the United States denied that Kamburowski had exhausted his administrative remedies (Am. Answer ¶ 37) and expressly set forth as a defense that "plaintiffs have failed to exhaust all available administrative remedies."  Am. Answer at Seventh Defense.  Moreover, Kamburowski has pointed to no statement on the part of the government or its attorneys which even intimates an acknowledgment that Kamburowski successfully exhausted his administrative remedies, or suggests that the United States would not raise an exhaustion defense in response to Kamburowski's amended complaint.  *See* Pl. Opp. at 5-7.  Nor has Kamburowski submitted any evidence that the government ever gave an "indication both to plaintiff's counsel and the Magistrate [*sic*], that an amended complaint should suffice."  Pl. Opp. at 7.  Simply because the United States elected not to oppose Kamburowski's motion for leave to amend his complaint does not mean that the ensuing amended complaint was jurisdictionally sound, or that the United States is somehow barred from asserting that it failed to cure the jurisdictional defect in the original complaint.  Kamburowski's argument that the "government's conduct" warrants some form of "equitable tolling" of the statute of limitations set forth in 28 U.S.C. § 2401(b), so as to permit him to file a new FTCA action at this juncture, is therefore utterly without merit.

a token opposition to most of the arguments the government set forth in this vein. *See* Pl. Opp. at 7-10. For example, he has no response to the proposition that his emotional distress claims (which form the great majority of his common law tort claims – *see* Am. Compl. ¶¶ 34, 44, 45, 46, 48, 50, 59) are not actionable under state law. *See* Def. Mem. at 14-15. Nor does he respond to the argument that his allegations of malicious prosecution fail to state a claim upon which relief can be granted under state law. *See* Def. Mem. at 21 n.7.

Kamburowski instead focuses on the government's arguments with respect to his false arrest and false imprisonment claims. *See* Def. Mem. at 15-20; Pl. Opp. at 7-9. But his response on that score is weak and misguided. Most notable is his utter failure to respond to the government's extended explanation of why Kidd had probable cause to arrest Kamburowski, and why the existence of such probable cause eviscerates any claim Kamburowski may have in the nature of false arrest or false imprisonment. Def. Mem. at 17-20. His failure to point to a scintilla of evidence that would suggest a triable issue of fact as to the existence of probable cause is tantamount to a concession that probable cause for the arrest did, indeed, exist – and such a concession dooms his tort claim. *Id.*

Instead of responding to the government's probable cause arguments, Kamburowski bases his argument on *Caban v. United States*, 728 F.2d 68 (2d Cir. 1984). Pl. Opp. at 7. However, he completely mischaracterizes the holding of that case. He argues that under *Caban* "the proper test for determining liability under the FTCA is the most analogous state law claim, with *Caban* itself recognizing as a matter of New York law that there would be claim for negligence in continued detention of even someone seeking entry at the border." Pl. Opp. at 7. But as one could perhaps surmise from the absence of a pinpoint cite in Kamburowski's brief, *Caban* says nothing of the kind, and in fact says exactly the opposite.

Caban was a native of Puerto Rico and an American citizen who was arrested by INS agents, and ultimately detained by them for six days, when he attempted to enter the country at JFK Airport from a flight originating in the Dominican Republic. He sued for false imprisonment and other torts under the FTCA. In affirming the district court's dismissal of his action, the Second Circuit held that the proper test for determining liability in a false imprisonment claim brought against an immigration officer is *not* the most analogous state-law claim, as Kamburowski argues, but rather the federal law governing immigration arrest and detention. 728 F.2d at 72-74. Because the immigration officer was authorized under federal law to take Caban into custody, the Court held, Caban had no claim for false imprisonment under the FTCA. *Id*.

Moreover, *Caban* explicitly considered and rejected the argument Kamburowski makes here (Pl. Opp. at 7-8), that because detention for immigration purposes "is a civil not a criminal proceeding," the courts must look to the case-law governing civil arrests by private persons, rather than the law governing criminal arrests by federal law enforcement officers, in assessing the propriety of arrests made for immigration purposes. *See Caban*, 728 F.2d at 73-74. Indeed, the court of appeals makes it clear that, because of the plenary authority immigration agents have to protect the nation's borders, immigration arrests enjoy even broader protection than do criminal arrests made on probable cause, and are privileged against common law tort suits even in the absence of probable cause, as long as they are authorized by federal law. *Id*. at 73-74.

As elaborated in defendants' opening memorandum, federal law authorized—indeed required—Kamburowski's arrest and detention. Def. Mem. at 16. Section 241 of the INA requires that "the Attorney General ***shall*** detain" any alien who has been ordered removed. 8 U.S.C. § 1231(a)(2) (emphasis added). Kamburowski argues that this provision only authorizes

detention of an alien for the first 90 days following the administratively final entry of the removal order, which in this case took place in May 2001. Pl. Opp. at 9. Kamburowski thus contends that because he absconded from his final order of removal and remained a fugitive for more than two and one-half years after the order was issued, the immigration agents were barred from taking him into custody and detaining him when they finally caught up with him in January 2004. Were this the law, any alien who becomes the subject of a final order of removal could avoid detention pending removal simply by going into hiding for ninety or more days.

The INA does not support this decidedly ill-conceived argument. To the contrary, 8 U.S.C. § 1357(a)(2) expressly authorizes immigration officers to "arrest any alien in the United States" if the officer "has reason to believe that the alien so arrested is in the United States in violation" of any law or regulation "regulating the admission, exclusion, expulsion, or removal of aliens." Moreover, 8 U.S.C. § 1253 provides that any alien who is subject to an outstanding final order of removal and who, like Kamburowski, willfully fails or refuses to depart from the United States within a period of 90 days from the date of the final order of removal, or who willfully fails or refuses to present himself for removal when directed to do so by the Attorney General, has committed a federal felony punishable by up to four years' imprisonment. And 8 U.S.C. § 1226(a) provides that "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [P]ending such decision, the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on . . . bond . . . or conditional parole."

Nor does Kamburowski have an answer to the government's citation to the ICE regulations that authorized his arrest and detention. As noted in the opening brief, 8 C.F.R. § 241.3 provides that, once an immigration court issues a final order of removal with respect to

an alien, that alien, if in the United States, "**will be taken into custody** pursuant to the warrant of removal." (Emphasis added.). Moreover, under 8 C.F.R. §§ 287.5(c)(1) and (e)(3), immigration officers such as Kidd and Carbone have the express power and authority to arrest aliens who remain in the United States in violation of the immigration laws, as well as the power "to execute warrants of arrest for administrative immigration violations." Similarly, 8 C.F.R. § 287.8(c) authorizes an immigration officer to arrest any alien whom the officer "has reason to believe . . . is an alien illegally in the United States," whether pursuant to a warrant of arrest or, in certain circumstances, even without a warrant. And 8 C.F.R. § 3.23(b)(4)(iii)(A)(1) provides that orders of removal entered *in absentia* "may be rescinded only upon a motion to reopen filed" with the immigration court, and even then may only be vacated when the alien demonstrates to an immigration judge that the failure to appear was because of exceptional circumstances beyond his control or that he did not receive notice.

On the basis of these statutory and regulatory provisions, Kamburowski's arrest and subsequent detention were authorized and proper, and they provide no basis for tort liability against the United States. Succinctly stated, once the immigration judge in Arlington, Virginia, entered a final order of removal against Kamburowski on May 31, 2001, and until that order was vacated by an immigration judge on July 16, 2004, Kamburowski's arrest by federal immigration officers, and his detention pending physical removal from the country, were mandated by federal law and therefore cannot form the basis for a suit on false arrest or false imprisonment grounds under the FTCA. *See Caban,* 728 F.2d at 72-74.

## II.    KAMBUROWSKI HAS FAILED TO ARTICULATE A LEGITIMATE BASIS ON WHICH HIS *BIVENS* CLAIMS CAN SURVIVE SUMMARY JUDGMENT.

As laid out in defendants' opening memorandum, Kamburowski's *Bivens*-type claims against Kidd and Carbone must be dismissed because (1) the comprehensive scheme for resolving immigration disputes between aliens and the government, established in the INA, forecloses an implied *Bivens* remedy against individual federal employees (Def. Mem. at 21-30); (2) several provisions of the INA, including 8 U.S.C. § 1252(g), expressly preclude the Court from taking jurisdiction over such claims (Def. Mem. at 30-33); (3) Kidd enjoys qualified immunity from suit under *Bivens* (Def. Mem. at 33-38); and (4) there is no evidence that Carbone was personally involved in any way in Kamburowski's arrest or subsequent detention (Def. Mem. at 38-40). Kamburowski's attempts at responding to these arguments are wholly without merit.

With regard to the first argument (Def. Mem. at 21-30), Kamburowski makes no effort to address *Wilkie v. Robbins*, 127 S. Ct. 2588 (2007), *Schweiker v. Chilicky,* 487 U.S. 412 (1988), *Bush v. Lucas*, 462 U.S. 367 (1983), *Chappell v. Wallace*, 462 U.S. 296 (1983), or any of the other authorities cited in the defendants' brief. Instead, he merely states that the Supreme Court has not overruled *Bivens* and that Congress has not created a separate compensation scheme for alleged Fourth Amendment violations by immigration officers. Pl. Opp. at 10. He also argues that it would not harm this country's foreign relations with Poland or Australia for this Court to recognize a *Bivens* remedy against Kidd, and he states that the Court should recognize such a remedy because the rights of an American citizen (namely his wife) are implicated. *Id*.

All of these statements are entirely beside the point. As set forth in the opening brief, because Congress has deliberately crafted an elaborate statutory remedial system to address the

relief available to aliens who question the basis for their arrest and detention pending removal, including systems for obtaining release on bond as well as judicial review of the order of removal, there is no basis for this or any other Court to imply a *Bivens* remedy that would allow aliens to sue immigration officers in their individual capacity for decisions made in connection with such arrests and detention. The fact that Congress did not provide a mechanism for obtaining monetary relief is of no consequence to the implication of a *Bivens* remedy, even where the pursuit of such a remedy is predicated on constitutional violations. *See* Def. Mem. at 21-28.

Moreover, the fact that immigration is an area in which Congress legislates with plenary power is a "special factor" that forecloses an implied *Bivens* remedy. *Id*. at 23-26. To the extent that Judge Gleeson's decision in *Turkmen v. Ashcroft*, No. 02-CV-2307, 2006 WL 1662663 (E.D.N.Y. June 14, 2006), holds to the contrary, defendants respectfully submit that that decision, which predates *Wilkie*, is not consistent with Supreme Court precedent and is in any event distinguishable in that it involved a challenge to the conditions of confinement during the plaintiffs' immigration detention and not a challenge to the decision to arrest and detain an alien who is the subject of a valid final order of removal and warrant of deportation.

With regard to the defendants' second argument (relating to 8 U.S.C. § 1252(g), *see* Def. Mem. at 30-33), Kamburowski's response is cursory and weak. *See* Pl. Opp. at 11. His attempt to distinguish *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), on the basis that Foster was actually deported whereas Kamburowski here challenges his allegedly "prolonged" detention, relies on a distinction without a difference. In this case, as in *Foster*, plaintiff is challenging a decision of an immigration officer to execute a removal order. As such, his suit is barred by 8 U.S.C. § 1252(g).

With regard to Kidd's claim of qualified immunity (Def. Mem. at 33-38), Kamburowski's response lacks foundation. Pl. Opp. at 11-12. As with his response to the motion to dismiss the FTCA false arrest claim, Kamburowski fails to cite any evidence that Kidd failed to act reasonably in arresting Kamburowski. As explained above, at 13-15, and in defendants' opening brief, at 15-21 and 35-38, federal law authorized – indeed required – Kamburowski's arrest and detention as of January 22, 2004. "When a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity." *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999), *cert. denied*, 530 U.S. 1261 (2000). Thus, once the immigration judge in Virginia entered a final order of removal against Kamburowski on May 31, 2001, and until that order was vacated by an immigration judge on July 16, 2004, Kamburowski's arrest by federal immigration officers, and his detention pending physical removal from the country, were mandated by federal law and presumptively reasonable, and therefore cannot be said to violate Kamburowski's Fourth Amendment rights.

Kamburowski's response to Kidd's qualified immunity, like the rest of his brief, relies on tendentious platitudes and cursory statements of fact that are wholly unsupported by any admissible evidence. He talks of "overwhelming evidence" that Kidd acted "in knowing disregard of exculpatory evidence confirming that the entire basis for [Kamburowski's] detention was void." Pl. Opp. at 11-12. But the only thing "overwhelming" about such evidence is its absence. Kamburowski has of course not cited to an iota of evidence (because there is none) that Kidd acted in violation of any statute, regulation, or Constitutional provision in arresting and detaining Kamburowski.

Finally, Kamburowski makes no effort at all to respond to the arguments for dismissing his *Bivens* claims against Carbone (Def. Mem. at 38-40) and indeed makes no

mention of Carbone anywhere in his brief. As he has apparently abandoned those claims at this juncture, they must be dismissed.

C<small>ONCLUSION</small>

For the foregoing reasons, and those set forth in the defendants' opening memorandum, this Court should Court should reject Kamburowski's arguments in whole, dismiss his FTCA claims for lack of subject matter jurisdiction, and either dismiss his *Bivens* claims with prejudice or else grant summary judgment to defendants as to those claims.

Dated:  Brooklyn, New York
March 4, 2008

B<small>ENTON</small> J. C<small>AMPBELL</small>
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820

By:  /s/ {FILED ELECTRONICALLY}
F. F<small>RANKLIN</small> A<small>MANAT</small> (FA6117)
Assistant United States Attorney
(718) 254-6024
franklin.amanat@usdoj.gov